AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
3/20/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: TV  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
3/20/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: clee  DEPUTY

United States of America

v.

JASVEEN SANGHA,

Defendant(s)

Case No. 2:24-mj-01612

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of March 19, 2024, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Tyler Abrego, DEA Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: March 20, 2024

Judge's signature

City and state: Los Angeles, California

Hon. Steve Kim, U.S. Magistrate Judge
Printed name and title

AUSA Ian V. Yanniello, Chief, General Crimes Section (213-894-3667)

**AFFIDAVIT**

I, Tyler Abrego, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against Jasveen SANGHA ("SANGHA") for a violation of Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute Methamphetamine.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## II. AFFIANT'S BACKGROUND

3. I am a sworn Special Agent of the United States Drug Enforcement Administration ("DEA") and am an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, the narcotics offenses enumerated in Title 18, United States Code, Section 2516.

4. I have worked for DEA since May 2023. I am currently assigned to Enforcement Group 2 at DEA's Los Angeles Field Division. Enforcement Group 2, which investigates narcotics trafficking, including investigations related to medical personnel and others diverting and/or illegally prescribing controlled substances, as well as money laundering violations under Titles 18 and 21 of the United States Code. Group 2 is comprised of special agents from the DEA, and local law enforcement personnel designated as Task Force Officers.

5. In conducting major narcotics investigations, I have become aware of many techniques utilized by narcotics traffickers. I have learned that these individuals utilize various tactics to avoid detection and/or apprehension by law enforcement officials. Techniques used by members of these organizations include the use of multiple locations, utilizations of numerous co-conspirators, the use of pay telephones, multiple cellular telephones, and the use of other techniques to conceal communications, including the use of encrypted messaging applications and email platforms, such as Protonmail.

### III. SUMMARY OF PROBABLE CAUSE

6. During an investigation being conducted by the DEA, United States Postal Inspection Service, and LAPD homicide detectives, SANGHA was identified as a narcotics dealer. On March 19, 2024, law enforcement personnel conducted a search warrant at SANGHA's residence located in North Hollywood, California. During the search, law enforcement seized significant quantities of illegal drugs, including approximately

1,978 grams of orange pills that field tested positive for methamphetamine, 79 bottles containing a clear liquid that field tested positive for ketamine, and various other suspect narcotics. As discussed below, law enforcement also seized cell phones belonging to SANGHA, which contained additional evidence related to SANGHA's drug trafficking activities, including conversations related to selling pressed methamphetamine pills and ketamine.

## IV. STATEMENT OF PROBABLE CAUSE

### A. SANGHA Possessed Significant Quantities of Narcotics Inside Her Home, Including Methamphetamine and Ketamine

7. On March 7, 2024, the Honorable Stephanie Christensen, United States Magistrate Judge for the Central District of California, authorized warrants to search SANGHA's person and residence (the "Federal Warrants"). See Case Nos. 2:24-MJ-01320 and 2:24-MJ-01321.

8. On March 19, 2024, law enforcement personnel executed the Federal Warrants at SANGHA's residence. At the time, SANGHA was present at the residence with a male later identified as J.T. Evidence found within the apartment confirmed it was SANGHA's residence, including mail addressed to SANGHA, women's clothing in the closet and within the apartment, identification documents, a medical insurance card, and multiple receipts referencing SANGHA's name. Among the

identification documents found was a passport in SANGHA's name issued by the United Kingdom.[1]

9. During a search of the residence, law enforcement identified two bedrooms. SANGHA and J.T. were first encountered in the master bedroom, where agents found a green journal with hand written notes that appeared to detail thousands of dollars in drug transactions, including sale prices and weights. Inside the master bedroom, agents also found user quantities of suspected drugs and a firearm inside of the closet.[2]

10. Inside of another bedroom in the residence, law enforcement officers found the following: approximately 1,978 gross grams of orange pills that field tested[3] presumptive positive for methamphetamine, approximately 79 bottles of a clear liquid that field tested presumptive positive for ketamine, 41 grams of pills suspected of being MDMA, 2,127 grams of pills suspected of being Xanax, 426 grams of substances suspected of being Ketamine, 323 grams of a substance suspected of being psilocybin mushrooms, and 128 grams of suspected cocaine. During the search, law enforcement also found a money counter, a scale that appeared to be covered in drug residue, a wireless signal and hidden camera detector,

---

[1] Based on information obtained during the investigation, I know that SANGHA has dual citizenship (U.S. and the United Kingdom) and that she has recently traveled internationally.

[2] The firearm was registered to J.T., who stated the gun belonged to him.

[3] A TruNarc handheld narcotics analyzer is a portable device used by the DEA to conduct a preliminary test to determine the presence of illegal drugs.

and drug packaging materials. The following is a photograph of the narcotics seized during the search:



B. **Evidence on SANGHA's Phone Shows She Is A Large Volume Drug Dealer.**

11. Pursuant to the Federal Warrants, law enforcement seized two phones belonging to SANGHA.[4] During a preliminary search of one of the phones, law enforcement discovered

---

[4] Based on a preliminary review of the phone, agents identified evidence linking SANGHA to the devices. Multiple messages are in the phone where the owner of the phone is identified as "jas". There are also photographs depicting what I know are SANGHA's hands holding suspected drugs and video files narrated by a voice that I recognize as SANGHA's.

5

multiple chat threads within an encrypted messaging application called Signal[5] that related to SANGHA selling drugs.

12. For example, on March 8, 2024, SANGHA communicated with a phone number ending in -7628 about SANGHA selling 100 "oranges" and "base". Based on my training and experience, "oranges" is a term commonly used to describe pressed methamphetamine pills (like those found inside SANGHA's residence), which are manufactured to look like authentic Adderall pills. I also know based on my training and experience, "base" and "K" are terms commonly used to refer to Ketamine.

13. Between March 10 and March 18, 2024, SANGHA also communicated with a phone number ending in -6122 about shipping vials of ketamine to the buyer. In the chat thread, SANGHA sent photos of the ketamine packaging and a photo of the shipping receipt, noting "I think you'll like these but remember they're double strength."



---

[5] Based on my training and experience, known drug traffickers use Signal and similar messaging applications due to the enhanced encryption coding of the applications, and the applications ability to automatically delete messages after a timeframe set by the user.

14.   SANGHA's phone also contained video files related to drug trafficking, including videos in which a voice I recognize as SANGHA's describes "cooking" ketamine while she boils liquid ketamine in a pot on a stove top to convert it to powder ketamine.



//
//
//
//

7

## V. CONCLUSION

15. For all the reasons described above, there is probable cause to believe that SANGHA violated Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute Methamphetamine.

          /s/
Tyler Abrego, Special Agent
Drug Enforcement Administration

Subscribed to and sworn before me
this 20th day of March, 2024.

THE HONORABLE STEVE KIM
UNITED STATES MAGISTRATE JUDGE